J-S75043-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN THE INTEREST OF: J.B., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.J.A.G., MOTHER | : | No. 1135 WDA 2017 |

Appeal from the Decree June 28, 2017
in the Court of Common Pleas of Blair County,
Orphans' Court at No(s):  2017 AD 8

BEFORE:  SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                FILED JANUARY 26, 2018

M.J.A.G. ("Mother") appeals from the Decree terminating her parental rights to her son, J.B. ("Child").  We affirm.

Child was born to Mother and Father[1] on June 21, 2015.  Father's daughter from a different relationship, A., also lived with the couple.  A. was removed from the home after she had suffered an untreated cigarette burn from Father.  During an investigation by Blair County Children, Youth and Families ("CYF"), it was discovered that Child had a fungal infection in his diaper area and pneumonia, both of which were untreated.  The conditions in the home were poor, with roaches, bed bugs and lice being found.  Child also was removed from the home.

_____

[1] Father, whose parental rights also were terminated, is not a party in these proceedings.

CYF first placed A. and Child ("the children") with Father's half-brother, D.H., but the children were later moved to the home of the McG's.[2] Initially, the permanency goal for Child was reunification. Mother was identified as needing assistance with housing, mental health, drug and alcohol treatment and relationship issues.

On March 22, 2017, CYF filed a Petition to terminate Mother's parental rights, and to change Child's permanency goal from reunification to adoption. On May 28, 2017, in addition to considering CYF's Petition, the orphans' court conducted a combined 12-month and 15-month review hearing. The orphans' court summarized what next occurred as follows:

At the combined 12-month and 15-month Permanency Review on May 28, 2017, [the orphans' court] received testimony that Mother had not established housing and[,] in fact[,] had changed her housing as she moved in and out of relationships with various men. Mother had terminated her mental health care from Primary Health Network to co-occurring services at the Home Nursing Agency. Chrystal Price[,] of Home Nursing Agency[,] testified that Mother's poor attendance resulted in her termination from the co-occurring and relationship skills group (which [Mother] started in December 2016), and her individual counseling attendance was at 60%. Mother had almost perfect attendance with reunification service visits with [Child], circles of security and a safety class. However, the reunification worker, Krista Gorman [("Gorman")], testified that despite their numerous discussions to problem solve, [and] Mother's attendance at Mental Health and Drug and Alcohol, Mother could not balance her treatment and work responsibilities. [Gorman] testified that Mother's moods and capacities fluctuated with the ups and downs of her various male relationships[,] which

_____

[2] Later, A. was found not to be dependent, and moved to Williamsport with her mother.

changed frequently.  [] Gorman also testified that Mother had stopped taking her medications as prescribed and even failed to fill [the prescriptions].  Mother continued to utilize marijuana to self-medicate[,] and could not establish enough Mental Health Treatment to stop the cycle.  [] Gorman testified that Mother struggles to take responsibility for her decisions and actions and prefers to see herself as a victim of others and/or circumstances[,] so any change in behavior is not possible or necessary with that perspective.  Although Mother has better personal stability when in a male relationship, the relationship is not sustained and the cycle repeats itself.  Mother does not have the ability (or willingness) to see how that change and chaos would affect the well-being and permanency of [Child], as a young developing child.

Orphans' Court Opinion, 8/25/17, at 4-5.  Additionally, the orphans' court found that Mother had not attended any of Child's doctor visits, and had not called regularly.  Id.

After that hearing, the orphans' court changed Child's permanency goal to adoption.  On June 28, 2017, the orphans' court conducted a hearing on CYF's termination Petition.  Following the hearing, the orphans' court terminated Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(2), (8), and (b).  Mother filed a timely Notice of Appeal and a Concise Statement of matters complained of on appeal.

Mother presents the following claims for our review:

I.      Whether the [orphans'] court erred and/or abused its discretion when it found clear and convincing evidence existed to terminate [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2)?

II.     Whether the [orphans'] court erred and/or abused its discretion when it found clear and convincing evidence existed to terminate [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8)?

- 3 -

III.   Whether the [orphans'] court erred and/or abused its discretion when it found clear and convincing evidence existed to terminate [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(b)?

Brief for Appellant at 4.

We begin with our standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the [orphans'] court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The [orphans'] court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subsection] 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subsection] 2511(b):  determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the

nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007).

Relevant to our review, 23 Pa.C.S.A. § 2511 provides, in pertinent part, as follows:

(a) General rule. — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations. — The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent....

23 Pa.C.S.A. § 2511(a)(2), (b).

Mother first argues that the orphans' court improperly terminated her parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2). Brief for Appellant at 12. According to Mother, Child originally was removed from her care because he was suffering from severe diaper rash and pneumonia, and therefore, he was 'without essential parental care.'" Id. Mother asserts that

there is no support in the record that Child lacked parental care, because she had taken Child to "several check-ups and vaccine appointments prior to his removal." Id. Mother directs our attention to evidence that she had scheduled and taken Child to appointments for a respiratory infection, and that one appointment was within a week of Child's removal from her care. Id. Mother additionally argues that Child's diaper rash was caused by an allergic reaction to diapers used by her brother-in-law and his wife, while Child was in their care. Id. at 13. Mother contends that she had the appropriate diapers at her house. Id. According to Mother, the conditions that led to Child's removal from her care do not "continue to exist," as she had been doing everything possible to alleviate these conditions prior to Child's removal. Id. Further, Mother states that she has been prevented from fully resolving her housing and employment situation because of the pending criminal charges against Father. Id.

In its Opinion, the orphans' court addressed Mother's claim as follows:

[T]he testimony establishes by clear and convincing evidence that [M]other has not cared for [Child] since he was approximately 6[] months old[,] and he is now over 2[] years of age. In over 15 months, [Mother] has not stabilized her living conditions or built parenting capacities that can provide safety for [Child] She continues to struggle with her mental health[,] which leads to self-medication, broken relationships and a sense of victimization[,] rather than hope for change and responsibility. The record supports the conclusion that [M]other has not progressed in her capacity or ability to provide safe[,] essential parental care[,] as she struggles mightily to take care of her own needs, even 15 months after [Child's] removal. Despite the best efforts of reunification, mental health and drug and alcohol providers, Mother has not stabilized enough in her

- 6 -

> mental health to improve her life conditions. As [the court] noted at the end of the goal change hearing, it is tragic and sad; however, the reality of the situation requires permanent forward movement for [Child's] well-being and benefit.

Orphans' Court Opinion, 8/25/17, at 7. The Orphans' Court's findings are supported in the record, and we discern no abuse of discretion with regard to its findings and conclusions. We therefore affirm on the basis of the reasoning set forth in the Orphans' Court's Opinion, as set forth above. See id. We additionally note the following.

Mother's claim that Child was removed from her care based upon his diaper rash and pneumonia diagnosis is belied by the record. At the termination hearing, CYF casework supervisor Diane Litzinger ("Litzinger") testified that in addition to Child's diaper rash and pneumonia, "the conditions in the home were very poor and there was too little to no furniture. The family had no diapers, [and] very limited food. It was later discovered that they also had ... bedbugs and roaches ...." N.T., 6/28/17, at 16. According to Litzinger, "I think the parenting skills we were concerned about [were] the lack of food, [] no diapers[,] and [Child] not being taken to the doctor for the pneumonia or the fungal infection, the fungal issue within his diaper area." Id. at 21. Litzinger testified that "[t]here was some follow-through" by Mother of the recommendations in her family service plan, but no actual completion of the recommendations. Id. at 25. In addition, there were several positive drug test results. Id. Mother had not successfully completed her mental health treatment. Id. at 26. Further,

Mother was not consistently taking her medications, and "follow-through has not been good." Id.

Thus, the record supports the findings of the orphans' court, and its legal conclusions are sound. See Orphans' Court Opinion, 8/25/17, at 7. Accordingly, we cannot grant Mother relief on this claim.

In her Statement of Issues, Mother also challenges the termination of her parental rights pursuant to 25 Pa.C.S.A. § 2511(a)(8) and (b). Brief for Appellant at 4. However, Mother does not address these claims in the Argument section of her brief. Rather, Mother argues that termination is not warranted because she was not responsible for any abuse, and CYF did very little to help Mother resolve the criminal charges against her. Id. at 14. Mother asserts the criminal charges were not resolved until after the termination proceedings. Id. at 15. Mother argues that any setbacks in her obtaining independent housing or stable employment were not her fault. Id.

As set forth above, we agree with the determination of the orphans' court that CYF had established, by clear and convincing evidence, that termination was appropriate pursuant to 25 Pa.C.S.A. § 2511(a)(2).[3] Regarding subsection (b), we observe that

_____

[3] We note that we need only agree with the orphans' court's decision as to one subsection of 23 Pa.C.S.A. § 2511(a) and subsection (b) in order to affirm the termination of parental rights. In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

[s]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [s]ection 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Regarding subsection (b), the orphans' court stated the following:

[The orphans' court] heard testimony from [] Gorman that [Child] enjoyed his visits with his Mother for the 2-hour sessions she maintained. [Gorman] also testified that Mother had appropriate interaction with [Child] and they shared a bond. However, [Gorman] indicated [that] she would not recommend unsupervised contact[,] even after 15 months[,] since Mother could not "keep up" with [Child's] level of activity to provide basic safety. Mother's chaotic living and untreated mental health would most certainly create unhealthy influences and living conditions for [Child]. For the large majority [] of his life, [Child] has lived with the [McG's], an adoptive resource, and he has met all developmental targets and[,] at times, ahead of schedule. He has bonded with the [McG's] and they have openly welcomed Mother's involvement and investment of time as Mother has

indicated. This has provided [Child] with the biological connection which he needs[,] and the safety and protection of a healthy home meeting his developmental, physical and emotional needs....

Orphans' Court Opinion, 8/25/17, at 7-8. Consequently, the orphans' court found that it was in Child's best interests to terminate Mother's parental rights. See id. The clear and convincing evidence of record supports the orphans' court's findings, and its legal conclusions are sound. We therefore affirm the orphans' court's termination of Mother's parental rights pursuant to subsection (b).

For the above-stated reasons, we affirm the Decree of the orphans' court, which terminated Mother's parental rights as to Child. We additionally grant the Application to withdraw the appearance of Gary A. Daldwell, Esquire, as guardian ad litem for Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2018

- 10 -